UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
FARRAH KULE-RUBIN, et al.,                      :
:
                Plaintiffs,           :   11 Civ. 2424 (TPG)
:
     – against –                          :   **OPINION**
:
BAHARI GROUP LIMITED, et al.,                   :
:
                Defendants.           :
:
------------------------------------------------x

      Plaintiffs are former employees of Bahari Group Limited ("Bahari Group") who claim that Bahari Group unlawfully withheld wages owed to them and induced them to continue to work for Bahari Group based on misrepresentations that their past and future wages would be paid. Plaintiffs move for judgment on the pleadings with respect to four of their claims and also move to dismiss defendants' counterclaims.

      The motions are granted, with an exception noted below.

## THE PLEADINGS

      The following allegations are assumed to be true and, unless otherwise indicated, are taken from plaintiffs' amended complaint.

      Plaintiffs in this action are eleven former employees of Bahari Group.

      Defendant Bahari Group is a corporation engaged in the manufacture, sale, and distribution of clothing. Defendants Reza Bahari and Fattaneh Bahari are owners of Bahari Group. Plaintiffs have also

sued 5 John Doe defendants who, they claim, were also owners of defendant Bahari Group.

All eleven of the plaintiffs were employed by Bahari Group at various points between 1994 and November 30, 2010. Although their start dates vary, each of them was "terminated" by Bahari Group on November 30, 2010.

Plaintiffs claim that starting in October 2010, defendants refused to pay plaintiffs Lai Wan Ng and Moon Chan, but told them that if they continued to work for defendants, they would be paid all previously earned wages and all future wages. Ng and Chan continued to work for Bahari Group because they believed this promise. However, plaintiffs claim that defendants did not intend to honor this promise.

In November 2010, defendants stopped paying all of its employees, including all of the plaintiffs. Defendants told plaintiffs that if plaintiffs continued to work for Bahari Group, their wages earned to date and future wages would be paid. Plaintiffs claim that they continued their employment with Bahari Group until the end of November 2010 in reliance on this representation, but that defendants did not intend to honor this promise.

On November 30, 2010, defendants terminated all of the plaintiffs without making any further wage payments. Thus, according to plaintiffs, Ng and Chan were not paid in either October or November, and none of the other plaintiffs were paid in November.

Plaintiffs also claim that defendants failed to pay various other sums which they assert they were due.  For example, three of the plaintiffs, Sheila Yen-Pfister, Lana Rybak, and Farrah Kule-Rubin, claim that defendants withheld their commission wages for periods of time beginning in July 2008.  Plaintiffs also claim that defendants did not reimburse plaintiffs for expenses in connection with their duties as employees and unused and accrued vacation time.  Plaintiffs also claim that the defendants failed to pay plaintiffs' health insurance premiums.

The Answer and Counterclaims

Defendants answered the amended complaint on June 1, 2011.  In their answer, defendants repeatedly make the following statement: "Defendants neither admit nor deny the allegations set forth in Paragraph [X] of Plaintiffs Complaint and leave Plaintiffs to their proofs." Of the more than 100 paragraphs in the amended complaint, defendants "neither admit nor deny" more than 50 of these paragraphs.

Plaintiffs now seek judgment on the pleadings on the basis of defendants' answer because defendants' answer does not deny many important facts.  Thus, it is important to summarize the content of the paragraphs in the amended complaint that defendants neither admit nor deny.  These paragraphs include the following:

- Paragraph 34, which provides that defendants stopped paying all plaintiffs in November of 2010 and that plaintiffs complained to defendants and requested payment of such wages;

- Paragraph 38, which provides that defendants made "unlawful

  deductions" from plaintiffs' wages, including requiring plaintiffs to incur expenses in connection with their duties as employees and failing to reimburse plaintiffs;

- Paragraph 39, which provides that defendants did not compensate plaintiffs for their unused and accrued vacation time;

- Paragraph 45, which provides that plaintiffs were "employees" within the meaning of the Fair Labor Standards Act ("FLSA") and that defendants were "employers" within the meaning of the FLSA;

- Paragraph 50, which provides that plaintiffs were "employees" within the meaning of the New York Labor Law ("N.Y.L.L.") and that defendants were "employers" within the meaning of the N.Y.L.L.;

- Paragraph 51, which provides that defendants knowingly failed to pay the New York minimum wage as required under N.Y.L.L. section 652;

- Paragraph 64, which provides that defendants Reza Bahari and Fattaneh Bahari ("the Individual Defendants") are two of the ten largest shareholders of defendant Bahari Group and that pursuant to New York's Business Corporation Law ("BCL"), the ten largest shareholders shall be jointly and severally liable for all wages, debts, or salaries due and owing to Bahari Group' employees;

- Paragraph 65, which provides that defendants failed to pay plaintiffs their earned wages, which constitute "wages" within the meaning of the BCL;

- Paragraph 66, which provides that plaintiffs notified the Individual Defendants of their intention to hold them jointly and severally liable for the plaintiffs' wages under the BCL.

As will be discussed below, by pleading that they neither admit nor deny these facts, defendants admitted the truth of these facts.

Defendants filed counterclaims along with their answer. In their counterclaims, they assert that Bahari Group began experiencing cash flow and credit problems around September 2010. These problems included the closing of certain stores that apparently purchased from

- 4 -

Bahari Group, the reduction of prices at other stores, and an increased cost of labor in China.

Defendants claim that during this time, plaintiffs began to speak with defendants' customers in an effort to secure employment for themselves. Defendants further contend that plaintiffs shared financial information with defendants' competitors and that defendants "lost all investor opportunities" due to such actions. Ultimately, Bahari Group closed in November 2010 and an unspecified bank was hired to take over.

Based on plaintiffs' alleged conduct, defendants assert two counterclaims: (1) fraud and (2) tortious interference with business relations. Both of these claims rely on defendants' allegations that some of the plaintiffs began speaking with some of defendants' customers in an apparent effort to divert business from defendants to the competitors of defendants. This includes an allegation that plaintiffs Rybak and Kule-Rubin attempted to divert business from Bahari Group to another company, Jump Apparel. Defendants also claim that Rybak and Kule-Rubin shared information about defendants business with a competitor and shared samples and designs with a competitor. Finally, defendants assert that plaintiff Yen contacted one of Bahari Group's customers and arranged a transaction with a manufacturer that was designed to steer business away from Bahari Group.

The Present Motions

Plaintiffs moved to dismiss defendants' counterclaims on June 20, 2011. Defendants have opposed such dismissal. On October 11, 2011, plaintiffs moved for judgment on the pleadings. To date, defendants have not responded to plaintiffs' motion for judgment on the pleadings.

## DISCUSSION

Motion for Judgment on the Pleadings

Plaintiffs move for judgment on the pleadings because, they claim, defendants' answer admits facts that entitle plaintiffs to judgment on some of their claims.

Under Federal Rule of Civil Procedure 8(b)(2), an "allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Although a party may deny an allegation if the party lacks sufficient knowledge or information to form a belief about the truth of an allegation, see Fed. R. Civ. P. 8(b)(5), in any other circumstance an answer that neither admits nor denies allegations is deemed to admit the truth of those allegations. See U.S. v. Vehicle 2007 Mack 600 Dump Truck, 680 F. Supp. 2d 816, 826 (E.D. Mich. 2010) (finding defendant to have admitted allegations where the answer stated "Claimants neither admit nor deny the allegations in these paragraphs and leave the Plaintiff to its proofs" and granting motion for judgment on the pleadings on the basis of such admissions) (citing 5 FED. PRAC. & PROC. CIV. § 1264 (3d ed.)); see also

Miller v. American Airlines, Inc., No. 03-C-7756, 2007 WL 489147, at *11 (N.D. Ill. 2007); Westfield High Sch. L.I.F.E. Club v. City of Westfield, 249 F. Supp. 2d 98, 102 n.4 (D. Mass 2003).  It follows that a plaintiff is entitled to judgment on the pleadings where the defendant's answer fails to deny the elements constituting a cause of action.  See Vehicle 2007 Mack 600 Dump Truck, 680 F. Supp. at 826.  Here, defendants neither admitted nor denied many allegations in the complaint and never stated that they lack sufficient information to form a belief about the truth of the allegations in the complaint.  Thus, all of the allegations that they "neither admit nor deny" are appropriately treated as admitted.  See id.

As described below, these admissions have the effect of entitling plaintiffs to judgment on the pleadings on certain of their claims.

### Plaintiffs' First and Second Claims for Failure to Pay Minimum Wages in Violation of Federal and State Law

New York and federal law both set forth a minimum wage to be paid to employees.  See N.Y.L.L. § 652; 29 U.S.C. § 206.  Defendants' answer admits that all of the plaintiffs worked for Bahari Group until their terminations on November 30, 2010.  It also admits that during the month of November 2010, defendants failed to pay plaintiffs' wages.

Defendants' admission that they refused to pay plaintiffs' wages in November of 2010 entitles plaintiffs to judgment on the pleadings with respect to their first and second claims for breach of the FLSA and N.Y.L.L. minimum wage law.  As defendants admit to paying plaintiffs nothing for the month of November, defendants obviously violated the

minimum wage requirements of both state and federal minimum wage law.  See 29 U.S.C. § 206; N.Y.L.L. § 652.

Plaintiffs claim that defendants also admit in their answer that they did not pay plaintiffs Wan and Ng in October 2010.  This argument arises out of defendants' admission in paragraph 51 of their answer that they violated the N.Y.L.L. "for the periods of employment during which no wage payments were made to Plaintiffs as set forth above."  However, unlike their admission with respect to November 2010, in paragraph 33 of their answer defendants squarely deny that they failed to pay Wan and Ng in October 2010.

Therefore, defendants have not admitted that they failed to pay Wan and Ng in October 2010, but have admitted that they failed to pay all plaintiffs from the beginning of November 2010 until the plaintiffs' termination.  Such failure to pay wages in November 2010 constitutes a violation of New York and federal minimum wage law.  Plaintiffs are entitled to judgment on the pleadings with respect to their first and second claims for failure to pay wages during November 2010, but plaintiffs are not entitled to judgment with respect to October 2010.

<u>Plaintiffs' Third Claim for Failure to Pay Earned Wages in Violation of N.Y.L.L.</u>

Plaintiffs claim that defendants' conduct also violated the N.Y.L.L. because it was a failure to pay "earned wages" in violation of the N.Y.L.L..

Under the N.Y.L.L., "'wages' include the earnings of an employee for labor or services rendered, regardless of whether the amount of

earnings is determined on a time, piece, commission or other basis. The term 'wages' also includes benefits or wage supplements as defined in section one hundred ninety-eight-c of this article." N.Y.L.L. § 190.1. N.Y.L.L. section 193 provides that no employer "shall make any deduction from the wages of an employee," with exceptions not relevant here. When an employee is terminated, "the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section." N.Y.L.L. § 191.3.

As discussed above, defendants admit that they refused to pay plaintiffs for the entire month of November 2010. Additionally, they admit that they made unlawful deductions from plaintiffs' wages and failed to reimburse plaintiffs for expenses they incurred. Defendants further admit to failing to compensate plaintiffs for their accrued and unused vacation time.

Plaintiffs are entitled to judgment on their third claim because defendants have admitted conduct that violates N.Y.L.L. section 193.

<u>Plaintiffs' Fourth Claim for Individual Liability Pursuant to New York Business Corporation Law Section 630</u>

Plaintiffs also seek to hold the individual defendants, Reza Bahari and Fattaneh Bahari, jointly and severally liable for the debts, wages, and salaries due to plaintiffs as a result of their work for Bahari Group.

Under the New York Business Corporation Law ("BCL"), the

> . . . ten largest shareholders, as determined by the fair value of their beneficial interest as of the beginning of the period during which the unpaid services referred to in this section are performed, of every corporation . . . no shares of which are listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, shall jointly and severally be personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees other than contractors, for services performed by them for such corporation.  Before such laborer, servant or employee shall charge such shareholder for such services, he shall give notice in writing to such shareholder that he intends to hold him liable under this section.

BCL § 630(a).

In paragraphs 64-67 of their answer, defendants admit the elements of plaintiffs' claim under the BCL.  The defendants admit that Reza Bahari and Fattaneh Bahari are two of the ten largest shareholders of Bahari Group, Ltd.  They do not deny the accurate statement of law that under the BCL, the ten largest shareholders of Bahari Group are jointly and severally liable for all debts, wages, or salaries due to employees for services performed for the corporation.  They admit yet again that they failed to pay plaintiffs their agreed upon salary, and they admit that these salaries constitute "wages" within the meaning of the BCL.  They further admit that, as required by the BCL, plaintiffs provided Reza and Fattaneh Bahari with written notice of their intent to hold them liable for wages.  Accordingly, Reza Bahari and Fattaneh Batari, as shareholders of Bahari Group, are jointly and severally liable for plaintiffs' November 2010 wages under the BCL.

Plaintiffs are entitled to judgment on their fourth claim for individual liability pursuant to the BCL.

Motion to Dismiss Counterclaims

Plaintiffs also move to dismiss defendants' counterclaims for fraud and tortious interference with business relations.

Fraud

To plead a claim of fraud under New York law, defendants must plead that plaintiffs made a material false representation, with intent to defraud, that they reasonably relied on the misrepresentation, and that they suffered damages as a result of such reliance. Meisel v. Grunberg, 651 F. Supp. 2d 98, 118 (S.D.N.Y. 2009).

A common law fraud claim is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standards. Id. at 108. To successfully plead such a claim, defendants must allege "'the time, place, speaker, and sometimes even the content of the alleged misrepresentation.'" Id. (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990)).

Here, defendants' counterclaim for fraud does not meet this standard. It does not allege any misrepresentations by plaintiffs nor does it explain how defendants relied on any such misrepresentations. In fact, the counterclaim does not even refer to most of the plaintiffs, and to the extent the counterclaim names any of the plaintiffs – this includes Kule-Rubin, Yen, and Rybak – the conduct complained of does not

include false statements with an intent to defraud on which defendants relied.  Rather, the counterclaim alleges that these people, inter alia, stole samples and diverted business away from defendants.  This is not common law fraud.  Moreover, even assuming the existence of a misstatement, defendants have not pleaded any facts supporting the theory that plaintiffs intentionally misled them, that defendants relied on such misleading statements, or that defendants suffered any damage caused by those misstatements.

Defendants' counterclaim for fraud is dismissed.

Tortious Interference with Business Relations

To plead a claim for tortious interference with business relations, defendants must plead that they had a business relationship with a third party, that plaintiffs knew of that relationship and intentionally interfered with it, that plaintiffs acted with malice, or used dishonest, unfair, or improper means, and that defendants were damaged in their business relationship as a result of plaintiffs' conduct.  Hassan v. Deutsche Bank, 515 F. Supp. 2d 426, 429 (S.D.N.Y. 2007).  Unless the alleged conduct "is criminal or independently tortious," the defendants must prove that plaintiffs have engaged in conduct "'for the sole purpose of inflicting intentional harm'" on them.  Hassan, 515 F. Supp. 2d at 430 (quoting Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (2004)).  This tort is not established where the conduct is merely consistent with a motive of "normal economic self-interest."  Carvel, 3 N.Y.3d at 190.

As a preliminary matter, defendants have only identified three plaintiffs – Rybak, Kule-Rubin, and Yen – who allegedly participated in any such conduct. With respect to the other plaintiffs, defendants' counterclaim does not plead facts sufficient to state a plausible claim for relief. The counterclaim does not state that any of these other plaintiffs did anything involving the elements of tortious interference with business relations.

Regarding Rybak, Kule-Rubin, and Yen, defendants' counterclaim also fails to state a claim. First, there is nothing improper about having conversations with other companies, even competitors of Bahari Group, about Bahari Group. Second, defendants have not explained which business relationships they had and which business relationships plaintiffs intentionally harmed by their actions. Defendants generally refer to business relationships with "third parties," but have not identified any of the business relationships at issue. Third, although the counterclaim does allege that certain plaintiffs stole samples, which could qualify as the type of improper, tortious conduct that could rise to the level of tortious interference, the counterclaim does not set forth sufficient facts to state a claim that such stealing was done with the intent to harm business relationships with any third party or that it actually damaged any such business relationships.

Defendants also have attached poor quality photographs of emails that allegedly establish that plaintiffs committed fraud or tortious

interference.[1]  These emails, which are not in the pleadings, need not be considered on this motion to dismiss.  See Ipreo Holdings LLC v. Thomson Reuters Corp., No. 09 Civ. 8099 (BSJ), 2011 WL 855872, at *6 (S.D.N.Y. Mar. 8, 2011) ("Plaintiff adds these new allegations in its opposition brief. . . . Plaintiff cannot amend its complaint in this manner.").

Moreover, even a cursory reading of these emails, to the extent they can be read and understood, shows that both emails concern innocuous behavior, not fraud or any other tort.  Both emails are dated after November 30, 2010, when Bahari Group closed.  In the first email, Rybak informs somebody – who apparently was a customer of Bahari Group – that Rybak is "not at Bahari any longer."  She also indicates that a couple of styles "are going jump" – defendants claim this is a reference to one of their competitors, Jump Apparel.  However, there is nothing improper or unlawful about plaintiffs informing others that they no longer work at Bahari Group.  Even assuming that this email did establish that plaintiffs diverted business from Bahari Group (after it admittedly was no longer in existence), this email does not support a claim of fraud or any other improper conduct.

---

[1] Instead of simply printing and submitting photocopies of these emails, defendants appear to have printed the emails and then taken poor quality photographs of these emails.  Defendants have submitted those photographs as an attachment to their opposition papers.  Due to the size and quality of the text, it is extremely difficult to decipher the contents of these emails.

The second email, also sent in January 2011, contains a statement by Kule-Rubin that "Bahari Group is no longer." This is simply a true statement about the status of Bahari Group in January 2011. It cannot possibly be read as fraud or as a tortious interference with a business relation.

## CONCLUSION

Plaintiffs are entitled to judgment on the pleadings with respect to their first, second, third, and fourth claims, with the exception that on plaintiffs' first and second claim, judgment is granted only with respect to the nonpayment of wages in November 2010, not October 2010. Defendants' counterclaims are dismissed.

This opinion resolves the motions listed as numbers 7 and 13 on the docket.

Dated: New York, New York
March 5, 2012

_____
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/5/12